**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ILLINOIS UNION INSURANCE COMPANY,**

**Plaintiff,**

**v.** **Case No: 8:23-cv-1414-MSS-NHA**

**THE VUE PASCO, LLC; MEGAN MCGINGLEY; SUSAN MORGAN; and JOSE ARAZO,**

**Defendants.**

---

**MEGAN MCGINGLEY; SUSAN MORGAN; and JOSE ARAZO,**

**Counter- and Third-Party Plaintiffs,**

**v.**

**ILLINOIS UNION INSURANCE COMPANY; RSG SPECIALTY LLC; and COAST TO COAST COMMERICAL INS., INC.,**

**Counter- and Third-Party Defendants.**

---

**ORDER**

**THIS CAUSE** comes before the Court for consideration of the parties' various motions to strike and to exclude expert testimony and the responses thereto. Specifically, this Omnibus Order addresses the following motions: (1) Defendants'

Daubert Motion to Exclude the Testimony and Opinions of Barry Davis, (Dkts. 149, 184); (2) Defendants' Daubert Motion to Exclude the Testimony and Opinions of Steven Plitt, (Dkts. 150, 185); (3) Illinois Union's Daubert Motion, (Dkts. 151, 183); (4) Illinois Union's Motion to Strike Isaac Zalta's Declaration, (Dkts. 154, 167); (5) Illinois Union's Motion to Strike Notice of Joinder by Coast to Coast Commercial Ins., Inc. and The Vue Pasco, LLC, (Dkts. 155, 169, 170); (6) Illinois Union's Motion to Strike Belatedly Disclosed Documents Used as Evidence by Megan McGinley, Susan Morgan, and Jose Arazo, (Dkts. 156, 179); (7) Illinois Union's Motion to Strike Amended Notice of Joinder by The Vue Pasco, LLC, (Dkts. 161, 170); (8) Defendants' Motion to Strike DE141-60, (Dkts. 168, 186); (9) Defendants' Motion to Strike the Declaration of Jessica McMahon, (Dkts. 171, 188); (10) Defendants' Motion to Strike the Declaration of Jacqueline Sieracki & IU's Summary Judgment Rescission Argument, (Dkts. 172, 187); (11) Defendants' Motion to Strike DE174-2, (Dkts. 189, 201); (12) Illinois Union's Motion to Strike Isaac Zalta's Declarations, (Dkts. 192, 198); (13) Illinois Union's Motion to Strike Luke Lirot's Declaration, (Dkts. 196, 206); (14) Illinois Union's Motion to Strike Adam Finkel's Declaration, (Dkts. 197, 207); and (15) Illinois Union's Motion for Judicial Notice. (Dkts. 200, 211)

## I. Rescission and Late Notice

As a preliminary matter, the Court notes that many of the pending motions relate to Illinois Union's proffered claim for rescission. The Court has since entered an Order denying Illinois Union's request to amend its complaint to add a claim for rescission. (Dkt. 202) Similarly, many of the pending motions deal with issues

involving Illinois Union's late notice and prejudice claim. While the Court allowed Illinois Union to amend its complaint to add this claim, (Dkt. 202), the Court has since determined that the late notice claim will be rendered moot if Illinois Union proves it mailed the cancellation notice for good cause or, alternatively Illinois Union cannot prevail on the late notice claim if its notice of cancellation was ineffective. (Dkt. 223) Accordingly, the following motions are due to be denied as moot: Defendants' Daubert Motion to Exclude the Testimony and Opinions of Barry Davis, (Dkt. 149); Illinois Union's Motion to Strike Belatedly Disclosed Documents Used as Evidence by Megan McGinley, Susan Morgan, and Jose Arazo, (Dkt. 156); Defendants' Motion to Strike DE141-60, (Dkt. 168); Defendants' Motion to Strike the Declaration of Jacqueline Sieracki & IU's Summary Judgment Rescission Argument (Dkt. 172); Defendants' Motion to Strike DE174-2, (Dkt. 189); Illinois Union's Motion to Strike Luke Lirot's Declaration, (Dkt. 196); Illinois Union's Motion to Strike Adam Finkel's Declaration, (Dkt. 197); and Illinois Union's Motion for Judicial Notice. (Dkt. 200)

## II. Remaining Motions

The Court will now address the remaining motions in turn.

### a. Defendants' Motion to Exclude Steven Plitt

First, Defendants move to exclude the expert testimony and opinions of Illinois Union's underwriting expert, Stephen Plitt.[1] (Dkt. 150) Plitt is an attorney who has

[1] Plitt also opines on issues related to rescission and late notice. Those portions of his opinion are now moot. Accordingly, the Court's discussion is limited to Plitt's opinion as it relates to cancellation, and it is not intended to suggest that Mr. Plitt is not qualified to opine on insurance underwriting issues.

spent his career representing policyholders and insureds in litigation, as well as acting as coverage counsel for insurance companies. (Dkt. 150-4 at 40) He is the senior author and editor of COUCH ON INSURANCE 3D and has authored various treatises on insurance law. He also teaches insurance law at the University of Arizona's College of Law and has been a licensed insurance broker since 1974. In his report, Plitt opines that Illinois Union canceled the Policy in accordance with the Policy's cancellation provisions. (Dkt. 150-4 at 20–29)

Defendants argue that Plitt's opinions should be excluded because they are legal conclusions that merely mirror Illinois Union's legal positions. Upon application of the Daubert principles to Plitt's opinions, the Court finds that Defendants have shown that Plitt's opinion should be excluded.

As a general principle, "testifying experts may not offer legal conclusions." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1112 n.8 (11th Cir. 2005); see also Commodores Ent. Corp. v. McClary, 879 F.3d 1114, 1129 (11th Cir. 2018) ("Courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law."). In the insurance context, expert witnesses may not testify "about the interpretation of [an insurance] policy and the scope of [the insurer]'s duty to defend under the policy." Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1540–41 (11th Cir. 1990). That is because "the construction of an insurance policy is a question of law for the court." Id. at 1541 ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

As such, "courts in this circuit have allowed insurance industry experts to testify regarding industry custom and practice, but have refused to admit testimony that purports to offer legal conclusions or tells the jury what result to reach." Houston Specialty Ins. Co. v. Vaughn, No. 8:15-cv-2165, 2017 WL 11415011, at *2 (M.D. Fla. Apr. 13, 2017); see also Ziolkowski v. Landmark Am. Ins. Co., No. 8:09-cv-776, 2011 WL 3715080, at *2 (M.D. Fla. Aug. 24, 2011) ("The extent of coverage under an insurance policy, the legal obligations of parties to a contract and the legal implications of the parties' conduct are questions of law to be decided by the court."); Copper v. Pac. Life Ins. Co., No. 2:03-cv-131, 2007 WL 430730, at *1 (S.D. Ga. Feb. 6, 2007) (permitting an expert to "opine as to industry custom and practice without presenting bare conclusions of law"). Nevertheless, where "the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, [a] passing reference to a legal principle or assumption . . . will not justify the outright exclusion of the expert's report in its entirety." Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc., No. 5:02-cv-58-OC-10GRJ, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004).

Here, Plitt specifically opines on Illinois Union's compliance with the Policy without reference to any industry standards or customs. While Plitt's report states that "it is not [his] intent to offer legal opinions" and that his opinions "are based upon compliance with industry standards, customs, and practices," (Dkt. 150-4 at 20), his opinions belie this disclaimer. For example, Plitt opines that "Illinois Union complied

with the policy cancellation provisions," and that "proof of mailing" the notice of cancellation "has been found to be sufficient compliance by the Florida courts with standard cancellation insurance policy provisions." (Id. at 22, 25–26) This is improper expert testimony because it invades the province of the Court. Accordingly, Defendants' Motion to Exclude the Testimony and Opinions of Steven Plitt, (Dkt. 185), is GRANTED.

**b. Illinois Union's Motion to Exclude Richard Faber**

Illinois Union moves to exclude the opinions of Defendants' underwriting expert, Richard Faber. (Dkt. 151) Faber is the Co-Founder of Underwriter's Resource, LLC, where he serves as an expert witness specializing in underwriting issues, provides educational and consulting services to producers and underwriters, and provides continuing education classes. (Dkt. 183-1) Prior to founding his company, Faber worked as an underwriting professional for multiple insurance companies. (Id.)

In his report, he makes the following conclusions: (1) Illinois Union's determination that The Vue was offering bottle service was the only reason it produced in its notice of cancellation; (2) The Vue's insurance application was an accurate representation of its operations; (3) bottle service is not a valid reason for canceling the Policy; (4) bottle service is not the actual reason Illinois Union canceled the Policy; (5) The Vue did not actually allow bottle service; (6) Illinois Union was required to cancel the Policy under Provision 2.b of the Florida cancellation endorsement; (7) The Vue complied with all underwriting requirements; (8) The Vue did not offer "aggressive" drink specials; (9) a "notice of cancellation" alone does not cancel the Policy; and (10)

Illinois Union did not provide proof of mailing the notice of cancellation. (Dkt. 183-3)

Faber's first, second, fourth, fifth, seventh, eighth, ninth, and tenth opinions are factual conclusions that do not aid the trier-of-fact and improperly invade the province of the jury. Faber's sixth opinion is a legal conclusion that invades the province of the Court, which must be the jury's only source on the law. Ziolkowski, 2011 WL 3715080, at *2 ("The extent of coverage under an insurance policy, the legal obligations of parties to a contract and the legal implications of the parties' conduct are questions of law to be decided by the court."). As a result, these opinions are due to be excluded.

Faber's third opinion merits closer discussion. In his third opinion, Faber concludes that bottle service was not a valid reason to cancel the Policy. In support, he notes that informational websites like The Vue's are notoriously out-of-date and inaccurate, yet Illinois Union took no steps to verify its alleged misapprehension of the website and rejected its insured's efforts to correct that misunderstanding. (Dkt. 151-4 at 7) Earlier in his report, he explained the importance of verifying the factual basis for cancellation:

> Due to the potential impact that cancelling insurance coverage can have, the insurance carrier's decision to terminate coverage needs to be based on real facts. The reason should never be based upon unsubstantiated facts, speculation, or unreliable information. If the condition or reason is based on unreliable sources, a responsible underwriter should investigate and confirm (usually with the insured) that the condition is real. Any decision to terminate coverage should be for a genuine reason that creates an unacceptable loss potential for the insurance carrier, and it must be done in accordance with the terms of the policy.

(Id. at 4) Thus, to the extent that Faber opines that bottle service was not a valid reason to cancel the Policy because Illinois Union did not comply with industry standards in investigating whether the basis for cancellation was accurate, he should be permitted to testify to that effect.

As further support for this opinion, Faber explains:

> This Policy's underwriting requirements were providing an application, loss runs, passing inspection and complying with underwriting conditions expressed on the 2018 RT quote. None of these are "bottle service." Also, the Underwriting guidelines in effect at the time of renewal does not make "offering bottle service" an ineligible risk. [They] state the 'risk should be declined' rather than must be declined. Thus, offering the underwriter discretion to elevate the risk for approval. Based on Illinois Union's own Guidelines for UW [Underwriting] Notices, these two inaccuracies in the notice render the February 14, 2020, Notice of Cancellation invalid.

(Id. at 7–8) Earlier in his report, Faber elaborated on the differences between Underwriting Guidelines and Underwriting Requirements:

> Over my career, I have underwritten risks for a variety of insurance carriers. Every insurance carrier operates under a system of authority levels. There are two types of authority levels, one that pertains to individual underwriters and one that extends across the company to all underwriters.
>
> Insurance carriers establish underwriting guidelines that generally instruct underwriters about what they can and cannot write. While those guidelines generally apply to all underwriters, insurance carriers also establish individual authority levels given to individual underwriters. Underwriters who have higher levels of experience and expertise are granted higher levels of authority, including the ability to deviate from company-wide guidelines. Ultimately, an insurance carrier can write any risk it wants to write. It just requires the underwriting staff to elevate the request to the level required in the authority system. Illinois Union's Underwriting Guidelines, for example, acknowledges that exceptions can be made if referred to the proper level staff.

> In contrast, underwriting requirements are not guidelines. Underwriting requirements are conditions that insureds must comply with. For example, an underwriter insuring a general contractor may require the general contractor to obtain proof of insurance and additional insured status from all of their subcontractors.

(Id. at 5–6) Thus, to the extent Faber opines that bottle service is not a valid reason to cancel the policy because it is more appropriately categorized an underwriting guideline than an underwriting requirement, he should be permitted to testify to that effect.

Accordingly, Illinois Union's motion to exclude the expert opinion of Faber is GRANTED IN PART and DENIED IN PART as set forth herein.

**c. Illinois Union's Motions to Strike the Declaration of Isaac Zalta**

Illinois Union moves to strike the declarations of Isaac Zalta, The Vue's corporate representative. (Dkts. 154, 192, 144-27, 177-47) Illinois Union argues that Zalta's declarations contradict the testimony he provided during his depositions, and as a result the Court should strike them as a sham. Defendants respond that Zalta's declarations are consistent with his testimony. (Dkts. 167, 198)

First, Illinois Union expresses concern that Zalta claims that The Vue never received the notice of cancellation. But Zalta consistently testified during his deposition that The Vue never received the notice of cancellation. (See, e.g., Dkt. 141-46 at 57:23–25) While there are other issues with this assertion (namely, a lack of foundation as addressed in the Court's Order on the Parties' motions for summary judgment) the Court cannot say it is inconsistent with his testimony. Moreover, the

Court is capable of weighing the reliability of this assertion without striking the declaration.

Illinois Union also takes issue with the following statement in Zalta's declaration:

> I am aware that in one place on The Vue's homepage in 2018, it said that The Vue offered bottle service. The Vue's website was created by the same web designer who created the webpages for other clubs owned by Mr. Dato, some of which did offer bottle service, and re-used the language from those clubs. When The Vue's insurance broker, Coast to Coast, brought this to The Vue's attention in March 2020, The Vue promptly had it corrected along with ambiguous language about the Vue's VIP service. I have attached a printout of The Vue's homepage as it appeared in 2019 as Exhibit A and the corrected home page as it appeared starting in March 2020 as Exhibit B.

(Dkt. 144-27 at ¶ 8)

At his deposition, Zalta testified that he did not know the name of the web designer who created the The Vue's website and that he had purchased new domain names because he couldn't access the old website. (Dkt. 167-2 at 82:19–83:35) He also testified that he did not know whether Mr. Dato had access to the website before he passed away and explained, "We had hired a company, and that company went defunct, and now I'm back in the process of talking to somebody about how I can retain and get back into our website so we can update it and stuff." (Dkt. 167-3 at 27:15–21)

"The sham affidavit rule precludes a party from manufacturing a genuine dispute of material fact by contradicting prior deposition testimony with an affidavit." Israel v. John Crane, Inc., 601 F. Supp. 3d 1259, 1265 (M.D. Fla. 2022). An affidavit

"may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.'" Bryant v. U.S. Steel Corp., 428 F. App'x 895, 896–97 (11th Cir. 2011) (quoting Van T. Junkins & Assocs. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir. 1984)).[2] Courts must carefully apply the sham affidavit rule because "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986). In other words, a "distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." Id. at 953.

At his deposition, Zalta left open the possibility of going back into the records to secure this information. Absent cross-examination establishing he did not follow through on this, the Court cannot find that he unambiguously testified that he would be unable to support the testimony he now offers.

The Court finds that Zalta's declarations are largely consistent with his deposition testimony. To the extent there are discrepancies, they go to his credibility or to the weight of the evidence. Considering this, the Court finds that no prejudice has resulted to Illinois Union as a result of Defendants' submission of the declarations

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

with their summary judgment briefing. The Court does not find the drastic remedy of striking the declarations to be necessary. Thus, the Motion is DENIED.

**d. Illinois Union's Motions to Strike Notices of Joinders**

The Vue and CTC did not file motions for summary judgment. Instead, they each filed a notice of joinder in the motion for summary judgment filed by Defendants McGinley, Morgan, and Arazo. (Dkts. 145, 146) Illinois Union then moved to strike these joinders, (Dkt. 155), and The Vue filed an Amended Notice of Joinder. (Dkt. 153) Illinois Union also moves to strike this Amended Notice of Joinder. (Dkt. 161) Because the Court denied both motions for summary judgment, however, the issue of whether The Vue and CTC may join McGinley, Morgan, and Arazo's motion for summary judgment is moot. Accordingly, Illinois Union's motions to strike the notices of joinder are DENIED AS MOOT.

**e. Defendants' Motion to Strike the Declaration of Jessica McMahon**

Next, Defendants move to strike the Declaration of Jessica McMahon. (Dkt. 141-10) Defendants argue that the Court should strike McMahon's declaration because she was never disclosed as a witness and was not proffered as one of Illinois Union's corporate representatives. Defendants further argue that McMahon's declaration improperly contradicts the testimony of Illinois Union's proffered corporate representatives. Illinois Union argues in response that McMahon's declaration merely supplements Sieracki's testimony.[3]

[3] Illinois Union also argues that it did not need to disclose McMahon because she is an impeachment witness. The Court is not persuaded by this argument.

The Court finds that McMahon's declaration is sufficiently similar to Sieracki's testimony such that it does not qualify as a sham affidavit. Considering this, the Court finds that no prejudice has resulted to Defendants as a result of Illinois Union's submission of the declaration with its Motion for Summary Judgment. While Illinois Union did not specifically identify McMahon in its initial disclosures, Illinois Union generically identified its "corporate representative" as a witness. The Court acknowledges there is mixed authority on whether parties must specifically identify a corporate representative in initial disclosures. Compare Diamond Resorts Int'l, Inc. v. Aaronson, No. 6:17-cv-1394, 2019 WL 1974833 (M.D. Fla. Mar. 13, 2019) (striking four unnamed corporate representatives); with Access Point Fin., LLC v. Katofsky, No. 1:21-CV-3176-TWT, 2023 WL 1805830, at *5 (N.D. Ga. Feb. 7, 2023) (holding that nondisclosure of corporate witness was "harmless," because the defendants "were fully aware of the corporate entities that [the witnesses] represented and thus cannot claim to be surprised by declarations from representatives of those entities"); see also Hooks v. GEICO Gen. Ins. Co., No. 3:13-cv-891, 2016 WL 5415134, at *8 (M.D. Fla. Sept. 28, 2016) (collecting cases and acknowledging "there is authority on both sides of this issue").

Defendants' main point of contention with McMahon's declaration is the following statement: "The Notice of Cancellation was included in a batch file printed for mailing on 2/14/2020, and it was mailed by the Branchburg service center to The Vue and RT Specialty, LLC ("RTS"). (Batch Email, Ex. B.) Nothing in the file indicates the Notice of Cancellation was returned by the United States Postal Service

as 'undeliverable' to the Vue. On the contrary, the Notice of Cancellation was mailed to the Vue's last address on file with Illinois Union." (Dkt. 171-1 at ¶¶ 5–8) Defendants assert that McMahon gives no explanation for how she has knowledge of what Branchburg did on February 14, 2020. Outside of the lack of foundation, Defendants assert that this contradicts Sieracki's concession that Illinois Union has no evidence that the Notice of Cancellation was mailed to The Vue.

To the extent McMahon's declaration purports to be proof of Branchburg's mailing of the notice, the Court does not consider it because the statement lacks foundation. As the Court detailed in its Order on the Parties' motions for summary judgment, Illinois Union provides evidence that it initiated the cancellation process, but evidence of the final step—actual mailing by the Branchburg service center—is lacking. The Court does not find the "drastic remedy" of striking the declaration in its entirety to be necessary. Thus, the Motion is DENIED.

Accordingly, it is hereby **ORDERED** as follows:

1. Defendants' Daubert Motion to Exclude the Testimony and Opinions of Barry Davis, (Dkt. 149), is **DENIED AS MOOT**.

2. Defendants' Daubert Motion to Exclude the Testimony and Opinions of Steven Plitt, (Dkt. 150), is **GRANTED**.

3. Illinois Union's Daubert Motion, (Dkt. 151), is **GRANTED IN PART and DENIED IN PART** as set forth herein.

4. Illinois Union's Motion to Strike Isaac Zalta's Declaration, (Dkt. 154), is **DENIED**.

5. Illinois Union's Motion to Strike Notice of Joinder by Coast to Coast Commercial Ins., Inc. and The Vue Pasco, LLC, (Dkt. 155), is **DENIED AS MOOT**.

6. Illinois Union's Motion to Strike Belatedly Disclosed Documents Used as Evidence by Megan McGinley, Susan Morgan, and Jose Arazo, (Dkt. 156), is **DENIED AS MOOT**.

7. Illinois Union's Motion to Strike Amended Notice of Joinder by The Vue Pasco, LLC, (Dkt. 161), is **DENIED AS MOOT**.

8. Defendants' Motion to Strike DE141-60, (Dkt. 168), is **DENIED AS MOOT**.

9. Defendants' Motion to Strike the Declaration of Jessica McMahon, (Dkt. 171), is **DENIED**.

10. Defendants' Motion to Strike the Declaration of Jacqueline Sieracki & IU's Summary Judgment Rescission Argument, (Dkt. 172), is **DENIED AS MOOT**.

11. Defendants' Motion to Strike DE174-2, (Dkt. 189), is **DENIED AS MOOT**.

12. Illinois Union's Motion to Strike Isaac Zalta's Declarations, (Dkt. 192), is **DENIED**.

13. Illinois Union's Motion to Strike Luke Lirot's Declaration, (Dkt. 196), is **DENIED AS MOOT**.

14. Illinois Union's Motion to Strike Adam Finkel's Declaration, (Dkt. 197), is **DENIED AS MOOT**.

15. Illinois Union's Motion for Judicial Notice, (Dkt. 200), is **DENIED AS MOOT**.

**DONE and ORDERED** in Tampa, Florida, this 25th day of September 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record
Any *Pro Se* parties